## D. F. Quin v. Gustav F. Herhold.

1. CUSTOMS—*Requisites —Admissibility in Evidence.*—A custom, to be admissible in evidence as such, must be shown to be certain, uniform, reasonable, and not contrary to law.

Assumpsit, on promissory notes. Appeal from the Superior Court of Cook County; Hon. AXEL CHYTRAUS, Judge, presiding. Heard in the Branch Appellate Court at the October term, 1900. Affirmed. Opinion filed February 21, 1902.

This was an action of assumpsit, brought before a justice of the peace, to recover on three promissory notes for $50 each, which, together with interest, amounted to $157 at the time of the trial in the Superior Court. The defense was a partial failure of consideration.

Quin v. Herhold.

The evidence showed that the defendant had executed and delivered these notes to the plaintiff as part of the consideration for the sale of the plates and copyright of a book entitled "Chirographic Art," and certain bound volumes and printed sheets of the same book. There was great controversy regarding the exact terms of the contract for this sale, the defendant claiming that he bought the entire book, complete, according to the sample shown him, including electrotype plates in full and 1,000 bound volumes and a lot of printed sheets; the plaintiff, on the other hand, maintaining that he sold only the script plates, one electrotype, zinc die for cover, some 800 copies of the bound book and enough sheets for 1,000 copies more.

The evidence adduced by the defendant showed that, taking the book page for page, there were no plates delivered to the defendant for fourteen full pages and forty-five headlines or heads of chapters.

The defendant testified that Mr. Herhold, the plaintiff, brought him a sample copy of the book, "and said he would like to supply the plates for this book." The court afterward refused to admit evidence offered by the defendant as to the custom of book-men in buying and selling books and book plates from sample copies of the book.

The plaintiff testified that he gave to the defendant the following:

```
700 copies at 20c............................$140
Unbound copies for 900 to 1,000 ............   15
Brass die for cover.........................   10
24 script plates and electrotype for same.....   35
Copyright....................................   25
                                             ------
                                             $225

Terms cash.................$ 75
Bal. notes 30–60–90 days at... 150
                          ------
                          $225
```

and said to him at that time as follows:

"I showed Mr. Quin this book; told him I would like to sell him the copyright, together with 800 copies, twenty-

seven script plates, electrotypes from these plates reproduced from the writing; also brass dies for the cover; enough for 100 unbound copies, some of which might be spoiled.

I also told Mr. Quin at that time I had electrotypes for the printed matter; that whatever plates I got from the printer I would give him gratis. I also told him that the pages were one or two lines short in some places, and where there were not any plates made I would not have plates made especially. I told him I had all the script plates with the exception of one or two; there was one missing there, No. 18.

I did not tell him whether or not I had the plates for the headlines, numbers of chapters, or numbers of plates; I simply sold him the script plates. The electrotypes for the printed matter in the front part of the book were distinct from the zinc etchings; that there was no charge for those. I told Mr. Quin he could have all those pages; that would help him along in setting up the book; he would not have to get written copy in setting it up; they would be furnished by me. When the 700 bound volumes were delivered I asked him whether he had received the books; he said he had, and two or three had holes in them, probably caused by packing, and that I ought to furnish a few more. There were between 700 and 710 bound volumes. When I saw him one day afterward he told me he had sold the books, but had not received any money, and could not pay at that time; that was about the 1st of October. About a week or two afterward I asked him about the unpaid balance; he said he could not pay until after Christmas. The plates were in the meantime at my house; I said he could keep them there. I wrote him a letter to come and get them."

The court allowed the admission of the notes in controversy in evidence, they having indorsed on the back the memoranda of the justice of the peace who had entered judgment on the notes; and the court permitted the jury to take these notes (with this indorsement on the back) in retiring to consider their verdict.

Plaintiff obtained a verdict for $157, upon which judgment was entered, and from that judgment defendant appeals to this court.

RITCHIE, ESHER & KNOBEL, attorneys for appellant.

Metropolitan West Side Elevated R. R. Co. v. Goll.

ALDEN, LATHAM & YOUNG, attorneys for appellee.

MR. JUSTICE WATERMAN delivered the opinion of the court.

The offered testimony as to custom was properly excluded. There was no evidence of any custom or usage known, certain, uniform, reasonable and not contrary to law. Greenleaf on Evidence, Vol. 2, Secs. 248–250.

It does not appear that defendant objected to the notes being taken by the jury with the indorsements thereon.

The evidence is not such that we can say that there is a clear preponderance in favor of the contention of the defendant.

The judgment of the Superior Court must therefore be affirmed.